# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PRO-DRIVER LEASING SYSTEMS, INC., a Wisconsin corporation<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>THE CINCINNATI INDEMNITY COMPANY, an Ohio corporation<br><br>　　　　　　　　Defendant. | **Civil Action No.: 2:16-cv-00995** |

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF REGARDING (1) DUTY TO DEFEND; (2) DUTY TO PAY INDEPENDENT COUNSEL; AND (3) DUTY TO FUND THE DEFENSIVE COUNTERCLAIM

In this insurance coverage case, Plaintiff Pro-Driver Leasing Systems, Inc. (hereinafter "ProDriver") sues for a declaratory judgment that: (1) Pro-Driver's commercial general liability insurer, Defendant The Cincinnati Indemnity Company (hereinafter "Cincinnati") has a duty to defend Pro-Driver in the underlying litigation styled as *EB IP Holdings, LLC, and Professional Drivers of Georgia, Inc. d/b/a ProDrivers v. Pro-Driver Leasing Systems, Inc. and PDL, Inc.*, Case No. 4:16-cv-01659, United States District Court for the Southern District of Texas, Houston Division (the "*EB IP suit*"), brought by *EB IP Holdings, LLC and Professional Drivers of Georgia, Inc. d/b/a ProDrivers* (hereinafter "EB IP"); and (2) Cincinnati must reimburse ProDriver for all defense expenses it incurred prior to and following Cincinnati's agreement to provide a defense in the *EB IP suit* as the nature of the asserted claims and applicable exclusions that potentially bar indemnity create a conflict of interest entitling ProDriver to independent counsel at Cincinnati's expense, plus both prejudgment interest at the applicable legal rate from the date of invoice, as well as the attorneys' fees incurred in this action pursuant to applicable Wisconsin law.

## THE PARTIES

1. Plaintiff ProDriver Leasing Systems, Inc. is a corporation organized under the laws of the state of Wisconsin. Its registered corporate office is located in Milwaukee County, Wisconsin.

2. Defendant Cincinnati is an Ohio corporation with its principal place of business in Hamilton County, Ohio.

## JURISDICTION

3. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between ProDriver and Cincinnati.

4. The amount in controversy is in excess of $75,000, including ProDriver's past and anticipated fees and costs incurred in defending the *EB IP suit*.

## VENUE AND APPLICABLE LAW

5. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(a)-(c) in that the insured, ProDriver is incorporated in Wisconsin and Milwaukee County is the place where the cause of action arose, as it is the place of issuance under the Policy.

6. On information and belief, Cincinnati sells insurance in Wisconsin, including in this District.

7. Cincinnati sold and delivered its Policy at issue in this action to ProDriver in this District.

8. This federal judicial district is the place of performance under the Policy and Wisconsin law governs Cincinnati's obligations to ProDriver.

## THE CINCINNATI POLICY

9. Cincinnati issued to ProDriver a Commercial General Liability Policy (No. EPP 004 12 12) in effect from October 10, 2015 to October 10, 2016 (the "Policy"). A copy of that Policy is attached as **Exhibit "1."**

10. The Policy provides coverage for "personal injury" or "advertising injury" arising out of an offense committed during the policy period, and defense of suits seeking "damages because of 'personal' or 'advertising injury.'"

11. Pertinent language from the Policy's "Commercial General Liability Coverage Form" form GA 101 12 04, includes:

> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and

> duty to defend the insured against any "suit" seeking those damages…
>
> **b.** This insurance applies to
>
> ….
>
> (1) "Personal and advertising injury" … caused by an offense arising out of your business.
> ….
>
> **SECTION V – DEFINITIONS**
>
> **1.** "Advertisement" means a notice that is a broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:
>
> **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".
>
> **17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> ….
>
> **f.** The use of another's advertising idea in your "advertisement"

**(Exhibit 1 [Form GA 101 12 04, pp. 7, 16, 22])**

### THE UNDERLYING *EB IP SUIT*

12. On June 10, 2016, *EB IP* filed the Complaint in the *EB IP suit*. A copy of the Complaint is attached as **Exhibit "2."** The Complaint includes the following allegations:

> 2. Plaintiff Professional Drivers of Georgia, Inc. d/b/a ProDrivers ("ProDrivers") is a Georgia corporation with a principal place of business at 1040 Crown Pointe Parkway, Atlanta, Georgia 30338.
>
> …
>
> 9. Plaintiff Professional Drivers of Georgia, Inc. ("ProDrivers") is the nation's leading **provider of temporary driver staffing and other services related to employment in the trucking industry**.
>
> …

18. Defendants provide temporary driver staffing and other services related to employment in the trucking industry **in direct competition with Plaintiffs**.

…

27. … Defendants **have used and continue to use** PRODRIVER in advertising their services in Texas, Wisconsin, Illinois, and on the internet. For example, Defendants advertise their "PRODRIVER" services, which include driver staffing and related services, on "prodriverleasing.com/our-services." See Exhibit D (true and correct copy of web page from prodriverleasing.com/our-services). Defendants also direct customers to various "PRODRIVER" locations in Wisconsin, Illinois, and Texas on a web page accessible at "prodriverleasing.com/contact-us/locations," where they invite consumers to contact them using the nationwide toll-free number 866.PRO.DRIV. See Exhibit E (true and correct copy of web page from prodriverleasing.com/contact-us/locations).

28. … Defendants **have used and continue to use** PDL DRIVERS in advertising their services in Texas and on the world wide web.

…

30. Defendants **advertise their services** in connection with the nationwide, toll-free number 866-PRO-DRIV.

31. Defendants' **use** of PRODRIVER and PDL DRIVERS has caused actual confusion among a significant number of Plaintiffs' current and prospective customers and drivers.

…

## COUNT V

## COMMON LAW UNFAIR COMPETITION

…

60. Defendant's services and Plaintiffs' services are offered through the United States (including Texas), placing the parties in the **same geographical areas and market**. Plaintiff ProDriver has continuously and consistently used the ProDrivers Marks in the U.S. and market, in general. ….

61. … Defendants have **developed, promoted, and sold their services** in such a manner as to inevitably suggest an association or affiliation with or sponsorship or approval by Plaintiffs, so as to **cause, or likely cause, confusion or mistake among current and prospective customers and drivers** as to the origin or sponsorship of Defendants' services, **all to Defendants' profit and Plaintiffs' damage**.

185988.3-10801-002-8/8/2016 4:48 PM

4

Case 2:16-cv-00995-JPS   Filed 08/08/16   Page 5 of 15   Document 4

…

63. Defendants' conduct, as set forth above, constitutes common law unfair competition under Texas law, which has **irreparably damaged and will continue to irreparably damage Plaintiffs**, together with their **goodwill and reputation**, unless Defendants are enjoined and restrained by this Court, Plaintiffs having no adequate remedy at law.

…

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs are entitled to and pray for relief as follows:
(i) That Defendants, their officers, agents, servants, employees and attorneys, and all persons acting under their permission and authority, **be preliminarily and permanently enjoined** and restrained … from using PRODRIVER … or any other designation … in any other manner that is **likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and services**….

…

(iv) That an accounting be conducted and judgment rendered against Defendants for:
  (a) **all profits** received by Defendants from the sale of goods and services under PRODRIVER … or other designation **confusingly similar to the Plaintiffs'** …;
  (b) **all damages** in an amount proven at trial **resulting from**, inter alia, **Defendants'** … **unfair competition, false designation of origin, and false description or representation** …;

(v) That Defendants be required to pay to Plaintiffs' **monetary damages to be used for corrective advertising** to be conducted by Plaintiffs.

**(Exhibit "2" ¶¶ 2, 9, 18, 27-28, 30-31, 60-61, 63 [emphases added])**

**ALLEGATIONS OF "THE USE OF ANOTHER'S ADVERTISING IDEA IN 'YOUR' ADVERTISEMENT'" ESTABLISH A POTENTIAL FOR COVERAGE UNDER OFFENSE (f)**

**A Three Element Test Applies to This Offense**

13. The Policy defines "personal and advertising injury" under offense (f) to include injury arising out of "[t]he use of another's advertising idea in your 'advertisement.'" Offense (f) contains three elements: (1) the use (2) of another's advertising idea (3) in your

"advertisement."

14. Each of the three elements described in the preceding paragraph is potentially met by the allegations of the *EB IP suit*, thereby triggering Cincinnati's duty to defend ProDriver.

### Element One Is Met: A "Use" is Alleged

15. The Policy does not define "use."

16. "Use" means "to employ for some purpose; put into service … apply to one's own purposes" or "[t]he application or employment of something."

17. The *EB IP* Complaint alleges:

> 27. … Defendants **have used and continue to use PRODRIVER in advertising their services** in Texas, Wisconsin, Illinois, and on the internet. For example, Defendants advertise their "PRODRIVER" services, which include driver staffing and related services, on "prodriverleasing.com/our-services." … Defendants also direct customers to various "PRODRIVER" locations in Wisconsin, Illinois, and Texas on a web page accessible at "prodriverleasing.com/contact-us/locations," where they invite consumers to contact them using the nationwide toll-free number 866.PRO.DRIV.

**(Exhibit 2 at ¶ 27 [emphasis added]).**

18. The allegations that ProDriver used *EB IP*'s advertising ideas and related information in advertising its own services implicates a "use" to satisfy the "use" element.

### Element Two is Met: "Of Another's Advertising Idea"

### "Of Another's"

19. The *EB IP* Complaint identifies the Plaintiff *EB IP* by its d/b/a "ProDrivers":

> 2. Plaintiff Professional Drivers of Georgia, Inc. d/b/a ProDrivers ("ProDrivers") is a Georgia corporation….

**(Exhibit 2 at ¶ 2).**

20. As *EP IP* does not share any relation or have any affiliation with ProDriver and do not allege any such relationship or affiliation, any use by ProDriver of *EP IP*'s "advertising idea" would be the use "of another" to satisfy that portion of this element.

### "Advertising Idea"

21. The term "advertising idea" is not defined in the Policy, but its ordinary meaning

can be understood as "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage."

22. The *EB IP* Complaint alleges that *EB IP* and ProDriver are engaged in the same business of "temporary driver staffing and other services related to employment in the trucking industry" and that they are "in direct competition" with each other **(Exhibit 2 at ¶¶ 9, 18).**

23. The *EB IP* Complaint further alleges:

> Defendants have **developed, promoted, and sold their services** in such a manner as to inevitably suggest an association or affiliation with or sponsorship or approval by Plaintiffs, so as to **cause, or likely cause, confusion or mistake among current and prospective customers and drivers** as to the origin or sponsorship of Defendants' services, **all to Defendants' profit and Plaintiffs' damage**.

**(Exhibit 2 at ¶ 61 [emphases added]).**

24. These allegations demonstrate *EP IP*'s belief that the reputation and goodwill developed through its use of the name "ProDrivers."

25. The allegations that ProDriver's use of their own "PRODRIVER" name confuses actual and potential customers "all to Defendants' profit and Plaintiffs' damage" indicates *EB IP*'s belief that the "ProDrivers" name provides value by attracting business. By using the name "ProDrivers" in connection with advertising its services, *EB IP* derives a benefit by "calling attention to [its] product or business … so as to increase sales or patronage," which constitutes an "advertising idea."

### ProDriver's Use of *EB IP*'s "Advertising Ideas"

26. The *EB IP* Complaint alleges that ProDriver "developed, promoted, and sold their services" by "us[ing] and continu[ing] to use PRODRIVER in advertising their services" to potential customers in relevant markets. **(Exhibit 2 at ¶¶ 61, 27).**

27. The *EB IP* Complaint further alleges that ProDriver's conduct "inevitably suggest[s] an association or affiliation with … Plaintiffs, so as to cause, or likely cause, confusion or mistake among current and prospective customers and drivers as to the origin or sponsorship of [Pro-Driver's] services, all to Defendants' profit and Plaintiffs' damage."

**(Exhibit 2 at ¶ 61).**

28.     The allegations reasonably imply that ProDriver's advertising and promotion of its own services causes confusion to consumers as to the identity of the service provider, and that ProDriver has been able to profit off of the goodwill and reputation for its own benefit at the expense of *EB IP*. As "ProDrivers" constitutes an "advertising idea" under Wisconsin law, Pro-Driver's alleged use of "PRODRIVER" in advertising its services is a use of Plaintiffs' "advertising idea" under applicable Wisconsin law. Thus, this element is satisfied.

### Element Three is Met: "In Your Advertisement"

### "In Your"

29.     The *EB IP suit* alleges that ProDriver advertised its services to *EB IP*'s current and potential customers:

> … Defendants advertise their 'PRODRIVER' services … on 'prodriverleasing.com/our-services. …Defendants also direct customers to various 'PRODRIVER' locations … on a web page accessible at 'prodriverleasing.com/contact-us/locations,' where they invite consumers to contact them using the nationwide toll-free number 866.PRO.DRIV.

**(Exhibit 2 at ¶ 27).**

30.     The *EB IP suit* further alleges that this advertising "**caused actual confusion** among a significant number of Plaintiffs' current and prospective customers and drivers" which allegedly resulted in ProDriver's profit and *EB IP*'s damage. **(Exhibit 2 at ¶¶ 27, 31, 61).**

31.     These allegations evidence a causal nexus between ProDriver's alleged conduct and *EB IP*'s injury.

### "Advertisement"

32.     "Advertisement is defined by the Policy as:

> a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:
>
> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

> b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**(Exhibit 1 [Form GA 101 12 04, p. 7])**

33. The *EB IP suit* alleges that ProDriver unfairly competed with *EB IP* by advertis[ing] their "PRODRIVER" services … on "prodriverleasing.com/our-services." … Defendants also direct customers to various "PRODRIVER" locations … on a **web page** accessible at "prodriverleasing.com/contact-us/locations," where they **invite consumers to contact them** using the nationwide toll-free number 866.PRO.DRIV." **(Exhibit 2 at ¶ 27).**

34. These allegations establish this element as the above notices about Pro-Driver's services were "published to the general public or specific market segments for the purpose of attracting customers or supporters."

35. The notices also constitute "material placed on the Internet" and, as used on Pro-Driver's website, were placed on a part of the website "about [its] goods, products or services for the purpose of attracting customers or supporters[.]"

## CINCINNATI'S INTELLECTUAL PROPERTY EXCLUSION DOES NOT BAR A DEFENSE

36. The Policy contains an exclusion to coverage for "'[p]ersonal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (the "IP Exclusion") **(Exhibit 1 [Form GA 101 12 04, pp. 8-9).**

37. The exclusion provides an exception that it "does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." **(Exhibit 1 [Form GA 101 12 04, p. 9).**

38. Based on the express language of the IP Exclusion, it only excludes coverage under Offense (f)—"use of another's advertising idea in your 'advertisement'"—where the claim arises out of patent, trademark, or trade secret. It does not exclude coverage arising from infringement of copyright, trade dress, or slogan, nor does it expressly exclude unlisted claims such as statutory and common law unfair competition which, according to a subsequent version of the Insurance Services Office ("ISO") drafted policy form were always intended to fall outside

the ambit of the IP Exclusion.

39. The *EB IP suit* expressly asserts claims for unfair competition and also implicitly alleges other potential types of infringement covered and expressly not excluded by the IP Exclusion.

**PRO-DRIVER IS ENTITLED TO RETAIN INDEPENDENT COUNSEL**

**Pro-Driver's Notice To Cincinnati and Cincinnati's Late Attempts To Appoint Counsel Whose Resume Did Not Reflect Substantial Intellectual Property Defense Experience**

40. On July 1, 2016, ProDriver provided notice to Cincinnati of the *EB IP suit*.

41. On or about July 20, 2016, Cincinnati orally agreed to defend the *EB IP suit*, but it did issue its reservation of rights letter until August 1, 2016 and that letter was not receiving my Pro-Driver's coverage despite the inclusion of an email in its communications coverage until August 8, 2016. A copy of Cincinnati's Reservation of Rights ("ROR") letter is attached as **Exhibit "3"** to this Complaint.

42. Without advise to the insured, and, unaware that ProDriver had already retained independent counsel, Cincinnati selected and appointed defense counsel even though the resume of the selected attorney and the chosen law firm does not reflect any intellectual property experience.[1] When queried, Cincinnati's claim representative had no explanation as to why counsel, without such requisite expenses, was selected, or why, in light of the reservation of rights reflected no right to independent counsel was recognized. Nor did defense counsel, as of the date of its retention, have any opportunity to interact with Cincinnati's insured, Pro-Driver, to formulate an effective defense strategy.

43. The day Cincinnati's appointed counsel contacted coverage counsel, Gauntlett & Associates, known to Cincinnati. At that juncture, appointed counsel learned that independent counsel Strasburger & Price, LLP had already been retained and had prepared an Answer and Counterclaims, which was duly filed in the *EB IP suit* on July 20, 2016. (ProDriver's Answer filed in the *EB IP suit* on July 20, 2016 with appointed counsel's acknowledgement and consent.

---

[1] *See* Attorney Wayne Walters of Ramsay & Murray, P.C. *Walters@RamsayMurray.com.*

(A copy of the Answer/Counterclaims is attached as **Exhibit "3"**). Despite this fact, Cincinnati's ROR letter of August 1, 2016 references only its selection of Ramsey & Murray, P.C. as appointed defense counsel. (A copy of the Reservation of Rights Letter is attached as **Exhibit "4"**).

### Cincinnati's August 1, 2016 ROR Letter

44. Cincinnati's August 1, 2016 reservation of rights letter (which agreed to defend Pro-Driver in the *EB IP suit*) received on August 8, 2016 purports to appoint counsel, Wayne Walters of Ramsey & Murray, P.C. A perusal of its website reveals no purported intellectual property expertise in the defense of similar actions to the *EB IP suit* in the United States District Court, Southern District of Texas, Houston Division, where the *EB IP suit* is pending.

45. On July 20, 2016, an answer and defensive counterclaim was filed by Pro-Driver in the *EB IP suit*, well in advance of Cincinnati's August 1, 2016 letter referencing Cincinnati's intent to appoint Walters of Ramsey & Murray as defense counsel.

### A Right To Independent Counsel Arises Based On Cincinnati's Reservation Of Rights In That Which It At No Time Advised Its Insured Might Be Entitled To Receive

46. The policy provided that:

> This insurance does not apply to: ...
>
> **i. Infringement of Copyright, Patent, Trademark or Trade Secret.**
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

47. Cincinnati's asserts that it will not indemnify claims within the intellectual property exclusion. Cincinnati's Reservation of Rights letter states, "plaintiff's claims in the lawsuits are predicated on PDLS' alleged trademark infringement." Its reliance on that exclusion creates conflict of interest requiring the appoint of independent counsel in that appointed defense counsel could secure a defense of the potentially covered unfair competition claims yet not

succeed in defense of uncovered trademark infringement claims by manner in which it conducts the defense thereby leaving the insured exposed. Liability that fell within the exclusion, outside any exception to it, would not be within coverage.

48. The same conflict independently arises pursuant to the "knowing violation" exclusion. It provides:

### Knowing Violation Exclusion

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

49. As the Reservation of Rights letter states, "Here, the Complaint alleges that PDLS' actions were willful, calculated, intentional and done with prior knowledge."

50. Defense counsel are positioned to elicit and control the representation of evidence in connection with the defense of *EB IP suit* in a manner that could trigger indemnification for certain asserted claims under the knowing violation exclusion.

### COUNT I

### Declaratory Relief – Duty to Defend

51. ProDriver incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

52. Valid contracts existed between ProDriver and Cincinnati, namely the Policy.

53. ProDriver fully performed all of the obligations and conditions to be performed under the Policy.

54. By selling the Policy, Cincinnati agreed to provide a defense for suits seeking personal damages for "personal and advertising injury" offenses as defined in the Policy.

55. ProDriver contends that the underlying *EB IP suit* Complaint alleges facts implicating the "personal and advertising injury" coverage under the Policy, thereby triggering Cincinnati's duty to defend ProDriver.

### COUNT II

### Declaratory Relief – Duty to Provide Independent Counsel

56. ProDriver incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

57. To date, Cincinnati has not notified ProDriver of the specific grounds they intended to assert as a reservation of rights in the *EB IP suit* and has not acknowledged ProDriver's right to independent counsel but its appointed counsel agreed that they should proceed to file the Answer/Counterclaim in the *EB IP suit*.

58. An actual controversy exists between ProDriver and Cincinnati that requires a judicial declaration by this Court of: (1) ProDriver's right to retain independent counsel and to (2) promptly reimburse most of the fees and costs they incurred at reasonable rates for the defense and prosecution of the counterclaims that are conducted against liability for the claims asserted against ProDriver.

59. The IP Exclusion may apply to bar indemnity from asserted claims for trademark infringement.

60. To the extent that the nature of liability that will attend at the time the case may proceed to trial could be uncovered if the only proven claims are for excluded trademark infringement as opposed to those premised on covered unfair competition, a conflict of interest arises such that the insured is entitled to retain independent counsel in connection with the defense of this action at Cincinnati's expense. Where counsel defending a suit can shape the manner in which the claims for relief are pursued and proof to establish liability and ultimately damages attach, such a factual scenario gives rise to a conflict of interest where the potential for uncovered claims is conjoined with covered claims in the same proceeding.

## COUNT III

### Declaratory Relief – Duty to Pay Fees for Defense Counterclaim

61. Pro-Driver incorporates by reference the allegations in the above paragraphs of this Complaint as though fully alleged herein.

62. The Counterclaim combined with the Answer filed by Pro-Driver on July 20, 2016 in the *EB IP suit* articulates claims for relief that mirror the affirmative defenses

incorporated into the answer thereby rendering the same legal theory to defeat liability also in some instances, as stated in the counterclaim, triggering the defendant's right to relief.

63. As a consequence, all attorneys' fees and costs expended by independent counsel, Strasburger & Price, are recoverable at the reasonable rate incurred by such counsel.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ProDriver prays for judgment against Defendant Cincinnati as follows:

1. A judicial declaration that (a) Cincinnati has a duty to defend ProDriver in the *EB IP suit*; and (b) ProDriver has a right to select independent counsel to defend its interests in the *EB IP suit*.

2. An award of all reasonable attorney's fees ProDriver has incurrent through its independent counsel that are directly related to the defense of the *EB IP suit* as well as those conducted against liability in conjunction with the filing and pursuit of the Counterclaim, where affirmative pursuit claims address the same legal issues asserted in the affirmative defenses to the Answer to the Complaint.

3. Such other and further relief the Court may award.


Date: August 8, 2016

        **GAUNTLETT & ASSOCIATES**

        By: /s/ David A. Gauntlett
        David A. Gauntlett, Esq.
        James A. Lowe, Esq. (*pro hac vice*)
        18400 Von Karman, Suite 300
        Irvine, California 92612
        Telephone: (949) 553-1010
        Facsimile: (949) 553-2050
        info@gauntlettlaw.com
        jal@gauntlettlaw.com


Attorneys for Plaintiff
PRO-DRIVER LEASING SYSTEMS, INC.